UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND, LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS-EMPLOYERS CONSTRUCTION INDUSTRY RETIREMENT FUND, and WESTERN WASHINGTON OPERATING ENGINEERS-EMPLOYERS TRAINING TRUST FUND,<br><br>          Plaintiffs,<br><br>   v.<br><br>O'BUNCO ENGINEERING INTERNATIONAL INC.,<br><br>          Defendant. | CASE NO. 2:23-cv-810<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

## 1.  INTRODUCTION

This matter comes before the Court on Plaintiffs Locals 302 and 612 of the International Union of Operating Engineers Construction Industry Health and

Security Fund, Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Fund, and Western Washington Operating Engineers-Employers Training Trust Fund's (collectively, the "Trust Funds") motion for summary judgment. Dkt. No. 13. Having considered the Trust Funds' motion, Defendant O'Bunco Engineering International Inc.'s ("O'Bunco") response, and the relevant record, as well as the argument of counsel, the Court GRANTS the Trust Fund's motion and enters judgment against O'Bunco for $103,890.77.[1]

## 2.   BACKGROUND

The Trust Funds are multiemployer, collectively bargained employee benefit plans regulated by the Employee Retirement Income Security Act of 1974 (ERISA),29 U.S.C. § 1001—1461, and the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5). Dkt. No. 1 ¶ 1.1-1.4. Employers contribute funds on behalf of their employees, and the Trust Funds provide benefits to eligible operating engineers, their dependents, and beneficiaries in Western Washington. Dkt. No. 14 ¶ 3. A third-party administrator, Welfare and Pension Administrative Services, Inc. ("WPAS"), administers the Trust Funds. *Id.* In this capacity, WPAS provides payroll and auditing services based on the terms of the labor agreements between International Union of Operating Engineers Locals 302 and 612 and each signatory employer. *Id.* ¶ 4.

---

[1] The Trust Funds seek $104,506.62. The Court slightly decreases the amount based on its calculation of liquidated damages. *See infra* Section 3.3.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 2

The following facts are undisputed. O'Bunco signed Letters of Assent binding it to six project labor agreements for public works projects in Western Washington. Dkt. Nos. 1 ¶¶ 3.2, 3.7, 3.12, 3.16, 3.21, 3.26; 8 ¶ 1. O'Bunco agreed to pay fringe benefits to the Trust Funds based on each hour of covered work performed by its employees on each respective project. Dkt. Nos. 1 ¶¶ 3.4, 3.5, 3.9, 3.10, 3.13, 3.14, 3.18, 3.19, 3.23, 3.24, 3.28, 3.29; 8 ¶ 1.

WPAS selected O'Bunco for an audit of its payroll and related business records for the period of April 1, 2020, through September 30, 2020. Dkt. No. 14 ¶ 13. After receiving updated records, WPAS completed an amended audit report on March 5, 2024, finding O'Bunco had both under and overpaid fringe benefit contributions due to clerical errors. Dkt. Nos. 14 ¶¶ 14-15; 15 ¶ 10. The parties agree O'Bunco underpaid $109,439.30 and overpaid $94,445.83 in fringe benefit contributions during the audit period. Dkt. Nos. 15 ¶ 10; 16 at 4.

The only remaining issue in this case is how much of O'Bunco's overpayments should be applied to reduce the amount owed in underpayments. Based on the testimony of Jonathan Sullivan, WPAS Data Controller, the Trust Funds state they can credit $81,365.29 of the $94,445.83 overpayment to O'Bunco's underpayment without adversely affecting their employees' healthcare eligibility and retirement benefits. Dkt. No. 14 ¶ 18. O'Bunco argues to the contrary that the Trust Funds should credit the full amount because Sullivan's testimony is too speculative to support withholding $13,080.54 (i.e., the difference between Sullivan's refund calculation and the total overpayment).

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 3

# 3. DISCUSSION

## 3.1 Standard of review.

"[S]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (internal citation omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, courts must view the evidence "'in the light most favorable to the non-moving party.'" *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Summary judgment should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

However, if a nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Even so, district courts may deny "further discovery if the movant has failed diligently to pursue discovery in the past, . . . or if the movant fails to

show how the information sought would preclude summary judgment." *California Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990).

### 3.2 O'Bunco fails to provide evidence refuting the only disputed point in this litigation, and thus summary judgment is appropriate.

The parties agree on the controlling law. ERISA § 403(c)(2)(A)(ii) permits a plan to refund an employer's mistaken contribution within six months. This section operates as "an exception to the general rule prohibiting plan assets from inuring to the benefit of employers." *Award Serv., Inc. v. N. California Retail Clerks Unions & Food Emps. Joint Pension Tr. Fund*, 763 F.2d 1066, 1070 (9th Cir. 1985). To receive a refund, employers must establish two points: (1) their overpayments were made based on a mistake of fact or law; and (2) the equities favor restitution. *Brit. Motor Car Distributors, Ltd. v. San Francisco Auto. Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

O'Bunco's overpayments occurred as a result of "clerical errors" similar to those that caused O'Bunco's underpayments. Dkt. No. 15 ¶ 10. At oral argument, the Trust Funds' counsel confirmed they do not contest that O'Bunco's mistake of law or fact caused the overpayments. Accordingly, the Court finds the first element satisfied.

As to the second element, the Trust Funds argue they "cannot net-out underpayments and overpayments on a 1:1 dollar basis" because doing so would potentially rescind healthcare coverage that had already been extended to employees or adversely impact their retirement benefits. Dkt. No. 14 ¶ 16. In addition, the Trust Funds cite the Affordable Care Act provision precluding

healthcare plans from rescinding coverage except under certain conditions. Dkt. No. 13 at 16. *See also* C.F.R. § 147.128.

Here, the WPAS Data Control Department performed a "net-out calculation" in which it "look[ed] at the contributions reported for each participant in each calendar month, determine[d] what the underpayment was and then determine[d] for each participant whether the backing out of the overpaid healthcare or retirement contributions would negatively impact their healthcare eligibility and the amount of their retirement benefit." *Id.* ¶ 17. "This was a detailed analysis that took several weeks to perform." *Id.* And in the end, Data Controller Jonathan Sullivan determined the Trust Funds can credit O'Bunco $81,365.29 "without adversely affecting their employees' healthcare eligibility and retirement benefits." *Id.* ¶ 18.

O'Bunco makes two primary arguments in response. First, O'Bunco argues no employee would be prejudiced if it received full credit for its overpayments. Dkt. No. 16 at 7. O'Bunco fails to support its contention with any evidence. Because a mere allegation will not foreclose summary judgment, the Court rejects O'Bunco's first argument.

Second, O'Bunco argues it needs further time to obtain information about Sullivan's calculations so that it can confirm the validity of his conclusion. Specifically, O'Bunco seeks "actual calculations, names of affected employees, [and] the Monthly Reconciliation Reports used by the Trust[.]" Dkt. No. 16 at 7. O'Bunco asks the Court to deny summary judgment under Rule 56(d) so that it can obtain further information.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 6

The Court finds relief under Rule 56(d) to be inappropriate under the circumstances. Discovery closed on May 3, 2024, and the Trust Funds moved for summary judgment a month later. O'Bunco did not move to extend discovery or seek any relief from the Court even though it concedes that it received the Trust Funds' amended audit before the deadline on April 18, 2024. Dkt. No. 16 at 11. Moreover, how the overpayment should be treated is perhaps the main issue here, so the need for discovery about O'Bunco's calculations and affected employees could have easily been anticipated. Instead, O'Bunco propounded no written discovery requests and took no depositions on this or any other topics. At oral argument, O'Bunco provided no excuse for its lack of diligence during discovery.

Because O'Bunco does not refute Sullivan's determination and reopening discovery is unwarranted, the Court finds the equities favor partial credit of O'Bunco's overpayments. A complete refund would adversely affect employee healthcare coverage and retirement benefits, and so equity dictates the Trust Funds may withhold the $13,080.54 at issue. *See Boards of Trustees of Nw. Ironworkers Health & Sec. Fund v. W. Rebar Consulting, Inc.*, No. 2:18-CV-00486-RAJ-BAT, 2021 WL 8776753, at *6 (W.D. Wash. Aug. 23, 2021), *report and recommendation adopted,* No. 2:18-CV-00486-RAJ-BAT, 2022 WL 2072983 (W.D. Wash. June 8, 2022) ("[Because] the evidence reflects that the . . . Trust Funds cannot refund or offset contributions that have already been used to provide benefits . . . the Court concludes that the equities do not favor restitution of these amounts.").

**3.3    The Trust Funds are entitled to an award under § 1132(g)(2).**

In an ERISA case to recover delinquent contributions, if a court issues a judgment in favor of a plan, it must award the plan the following:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). "To be entitled to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996). The Trust Funds argue they are entitled to $28,074.51 in fringe benefit contributions, $13,748.57 in liquidated damages, $47,201.34 in accrued prejudgment interest, and $15,482.20 in audit accounting fees for the audit period April 1, 2020, through September 30, 2020. Dkt. No. 13 at 5. In sum, the Trust Funds seek an award of $104,506.62. *Id.*

The Trust Funds meet all three requirements for the remedies requested above: (1) O'Bunco owed contributions when the Trust Funds filed its complaint; (2) this Court enters a judgment against O'Bunco; and (3) each of the trust agreements provides for "liquidated damages of twelve percent," "interest of twelve percent," and "payment of the [T]rust [F]und's attorney fees, costs of collection, and auditor's

fees." Dkt. Nos. 1 ¶¶ 3.31, 3.32, 3.33; 8 ¶ 1. Therefore, the Court grants the Trust Funds' request for interest, liquidated damages, and accounting fees.

But the Court disagrees with the Trust Funds' calculation of liquidated damages. Twelve percent of the total underpayments ($109,439.30) is $13,132.72. The Trust Funds seek $13,748.57, which is $615.85 more than the Court's derived figure. Because the Court cannot reconcile the difference, it awards the Trust Funds $13,132.72 in liquidated damages. If the Trust Funds take issue with the Court's calculations, they may raise their objection in their motion for attorneys' fees.

### 4. CONCLUSION

The Court GRANTS the Trust Funds' motion for summary judgment. Dkt. No. 13. The Court ENTERS judgment against O'Bunco for $103,890.77, consisting of: $28,074.51 in delinquent fringe benefit contributions; $13,132.72 in liquidated damages; $47,201.34 in accrued, prejudgment interest; and $15,482.20 in audit/accounting fees.

Interest on the contributions portion of the judgment will accrue at the 12 percent rate contained in the applicable trust agreements and pursuant to 29 U.S.C. §1132(g)(2).

The Trust Funds must move for reasonable attorney fees and costs by no later than 14 days of the date of this Order.

Dated this 12th day of September 2024.

Jamal N. Whitehead
United States District Judge