1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12
13
14

LOCALS 302 AND 612 OF THE
INTERNATIONAL UNION OF
OPERATING ENGINEERS
CONSTRUCTION INDUSTRY
HEALTH AND SECURITY FUND,
LOCALS 302 AND 612 OF THE
INTERNATIONAL UNION OF
OPERATING ENGINEERS-
EMPLOYERS CONSTRUCTION
INDUSTRY RETIREMENT FUND, and
WESTERN WASHINGTON
OPERATING ENGINEERS-
EMPLOYERS TRAINING TRUST
FUND,

CASE NO. 2:23-cv-810

ORDER

15
16

                    Plaintiffs,
        v.

17

O'BUNCO ENGINEERING
INTERNATIONAL INC.,

18

                    Defendant.

19
20

## 1. INTRODUCTION

21

        This matter comes before the Court on Plaintiffs Locals 302 and 612 of the

22

International Union of Operating Engineers Construction Industry Health and

23

Security Fund, Locals 302 and 612 of the International Union of Operating

ORDER - 1

Engineers-Employers Construction Industry Retirement Fund, and Western Washington Operating Engineers-Employers Training Trust Fund's (collectively, "Trust Funds") motion for attorneys' fees and costs. Dkt. No. 28. Having considered the Trust Funds' motion, Defendant O'Bunco Engineering International Inc.'s ("O'Bunco") response, and the relevant record, the Court GRANTS the Trust Fund's motion and awards them $50,311.50 in attorneys' fees and $656 in costs.

## 2. BACKGROUND

The Trust Funds are multiemployer, collectively bargained employee plans regulated by the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001–1461, and the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5). Dkt. No. 1 ¶¶ 1.1–1.4. O'Bunco agreed to pay fringe benefits to the Trust Funds by signing labor agreements for public works projects in Western Washington. Dkt. No. 14 ¶ 3. The Trust Funds sought to recover from O'Bunco delinquent fringe benefit contributions, liquidated damages, accrued prejudgment interest, and in audit accounting fees for the audit covering the period April 1, 2020, through September 30, 2020. The Court granted the Trust Fund's summary judgment motion and entered judgment against O'Bunco for $103,890.77. Dkt. No. 23 at 9.

The Trust Funds now move for their attorneys' fees and costs in bringing this action–$54,653[1] and $656, respectively. Dkt. No. at 1. In support of their fee

---

[1] Initially, the Trust Funds requested $55,071.50 in attorneys' fees. Dkt. No. 28 at 1. But in their reply, the Trust Funds concede that their request should be reduced by $418.50 because they inadvertently included a paralegal's August 29, 2024, entry for attending the summary judgment hearing. Dkt. No. 31 at 3.

petition, the Trust Funds' attorney, Jeffrey Maxwell of Barlow Coughran Morales & Josephson, P.S., submits his sworn declaration and detailed fee and costs reports. Dkt. No. 29. According to Maxwell, his firm "spent over 250 hours directly relating to the Trust Funds' efforts to enforce O'Bunco's obligations to comply with the audit, and to subsequently enforce O'Bunco's payment of the audit delinquency." *Id.* ¶ 10. In his supporting declaration, Maxwell acknowledges that aspects of this time qualify as "clerical in nature or . . . for other reasons . . . are not appropriate for inclusion in a request for attorneys['] fees." *Id.* In sum, the Trust Funds seek to recover fees for 211.8 hours,[2] "resulting in a fee request of $[54,653]." *Id.*

The Trust Funds seek to recover fees incurred in connection with this action under 29 U.S.C. § 1132(g)(2) and fees incurred before filing this lawsuit under the trust agreements' fee provisions. Dkt. No. 31 at 4.

## 3.  DISCUSSION

### 3.1    Attorneys' fees provisions.

#### 3.1.1      29 U.S.C. § 1132(g)(2)(D).

Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of a plan or . . . a collective bargaining agreement shall . . . make such contributions in accordance with the terms and conditions of such a plan or such agreement." 29 U.S.C. § 1145. "In any action under [ERISA] by a fiduciary for or on behalf of a plan to enforce [29 U.S.C. § 1145] . . . in

---

[2] This total is taken from the total provided in the "Detail Fee Report," Dkt. No. 29 at 18, reduced by 3.1 hours to reflect the Trust Funds' inadvertent August 29, 2024, entry.

1    which a judgment in favor of the plan is awarded, the court *shall* award the plan

2    . . . reasonable attorney's fees and costs of the action, to be paid by the defendant[.]"

3    29 U.S.C. § 1132(g)(2)(D) (emphasis added).

4           Courts in the Ninth Circuit apply the "hybrid lodestar/multiplier approach

5    . . . as the proper method for determining the amount of attorney's fees in ERISA

6    actions." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.

7    2000). Under this two-step process, a court first "determines the 'loadstar' amount

8    by multiplying the number of hours reasonably expended on the litigation by a

9    reasonable hourly rate." *Id.* Second, "a court may adjust the lodestar upward or

10   downward using a 'multiplier' based on factors not subsumed in the initial

11   calculation of the lodestar." *Id.* Multipliers are appropriate only in rare and

12   exceptional cases—evidence must show that the lodestar amount is unreasonably

13   low or high. *Id.*

14          **3.1.2    The Revised Trust Agreement of Locals 302 & 612.**

15          Under the Revised Trust Agreement of Locals 302 & 612 of the International

16   Union of Operating Engineers Construction Industry Health and Security Fund

17   ("Revised Trust Agreement of Locals 302 & 612"), Article II, Section 9, the parties

18   agreed that "if the delinquent account of any [employer] is referred to any attorney

19   for collection, such [employer] shall immediately become liable for a reasonable sum

20   for the attorney fees, court costs, and all reasonable expenses, including payroll

21   auditor fees, in connection with such suit or claim." Dkt. No. 14 at 238–239.

22

23

**3.2    The Trust Funds are entitled to recover attorneys' fees and costs.**

O'Bunco argues that the Court should apply 29 U.S.C. § 1132(g)(1) and exercise its discretion to deny attorneys' fees, citing *Henderson v. Unum Life Ins. Co.*, 736 F. Supp. 100, 107 (D.S.C. 1989), *aff'd*, 900 F.2d 252 (4th Cir. 1990). But as the Trust Funds correctly argue, that provision does not apply to actions by a fiduciary on behalf of a plan to enforce 29 U.S.C. § 1145 to recover delinquent contributions. Specifically, 29 U.S.C. § 1132(g) states:

> **(1)** In any action under [ERISA] (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
>
> **(2)** In any action under [ERISA] by a fiduciary for or on behalf of a plan to enforce [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan— . . .
> reasonable attorney's fees and costs of the action, to be paid by the defendant[.]

It's clear that 29 U.S.C. § 1132(g)(2) applies here—the Trust Funds sued O'Bunco to enforce 29 U.S.C. § 1145. Dkt. No. 1 ¶ 4.5. Indeed, in its order granting summary judgment, the Court held that the Trust Funds met all requirements to be granted a mandatory award under 29 U.S.C. § 1132(g)(2). Dkt. No. 23 at 8.

O'Bunco also fails to refute that it is required to pay attorneys' fees under the Revised Trust Agreement of Locals 302 & 612. *See generally* Dkt. No. 30.

**3.3    The Trust Funds' fee and costs request is reasonable.**

Having determined that the Trust Funds are entitled to recover fees and costs, the Court must now determine the reasonableness of the fees sought. Applying the lodestar approach outlined for ERISA cases, the Court must first

1    multiply the number of hours reasonably expended on the litigation by the

2    reasonable hourly rate. *See Van Gerwen*, 214 F.3d at 1045.

3        Maxwell, and his partner Noelle Dwarzski, seek approval of a $305 hourly

4    rate. Dkt. No. 29 ¶¶ 3, 4. The paralegals seek a rate of, at most, $135. *Id.* at 7–18.

5    To justify their rates, the Trust Funds cite *N.W. Carpenters Health & Sec. Tr. et la.*

6    *v. Marin Bros. Inc. et al.*, Case No. 2:23-cv-979-RSL (W.D. Wash. Jun. 30, 2023),

7    Dkt. No. 17 (approving base hourly rate of $310); *N.W. Carpenters Health & Sec. Tr.*

8    *et al. v. Sightline Professionals* LLC, Case No. 2:23-cv-2005-JHC (W.D. Wash. Dec.

9    29, 2023), Dkt. No. 16 (approving base hourly rate of $310); and *Locs. 302 & 612 of*

10   *the Int'l Union of Operating Engineers Constr. Indus. Health & Sec. Fund et al. v.*

11   *Am. Veterans Constr. Consulting & Supply LLC*, Case No. 2:23-cv-460-RSL, Dkt.

12   No. 19 (approving a base hourly rate of $285). Dkt. No. 28 at 3–4. O'Bunco does not

13   object to these hourly rates in its response. *See generally* Dkt. No. 30. Given that the

14   Trust Funds provide other local cases approving similar rates for attorneys with

15   similar skill and experience in the Seattle market, and O'Bunco fails to argue the

16   base hourly rates are unreasonable, the Court approves the hourly rates sought

17   here. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)

18   ("Generally, when determining a reasonable hourly rate, the relevant community is

19   the forum in which the district court sits.")

20       As for the number of hours claimed, the party seeking fees has the "burden of

21   showing the time spent and that it was reasonably necessary to the successful

22   prosecution of" the case. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d

23   1545, 1557 (9th Cir. 1989). The Trust Funds include a detailed fee report reflecting

the time spent by their attorneys and paralegals working on this matter. Dkt. No. 29 at 7–19. According to the report, 214.9 of billable time was expended on this case over a three-and-a-half-year period. *Id.*

O'Bunco argues this is an excessive amount. Dkt. No. 30 at 3. Specifically, O'Bunco argues that attorneys' fees and costs incurred before the start of this lawsuit should not be included, and that the Trust Funds' attorneys spent too much time on this matter, in which nothing "novel" was presented, as illustrated by the fact that the amount of fees requested "is twice the amount of the Trust[] [Funds'] principal claim." *Id.* Besides these arguments, O'Bunco does not say what aspects of the Trust Funds' claimed fees are excessive or challenge any specific billing entries.

Whether the Trust Funds are entitled to fees incurred pre-litigation is a matter of contract interpretation. Washington law governs the issue of contract interpretation here. *See Kent 160 LLC v. City of Auburn*, No. C09-1670RSL, 2010 WL 1691870, at *2 (W.D. Wash. Apr. 26, 2010). Under Washington law, the goal of contract interpretation is to determine the intent of the parties. *Deep Water Brewing v. Fairway Res. Ltd.*, 215 P.3d 990, 1001 (Wash. Ct. App. 2009). To do so, courts follow the "objective manifestation theory of contracts" by determining the intent of the parties from the reasonable meaning of the words used in the contract. *GMAC v. Everett Chevrolet, Inc.*, 317 P.3d 1074, 1078 (Wash. Ct. App. 2014). "[C]ourts construe contracts as a whole to effectuate all of the contract's provisions, so as not to render words superfluous," *Fedway Marketplace W., LLC v. State*, 336 P.3d 615, 620 n.12 (Wash.Ct.App.2014) (citing *Colo. Structures, Inc. v. Ins. Co. of the W.*, 167 P.3d 1125 (2007)), and courts presume that words have the same

meaning throughout the contract, *McLane & McLane v. Prudential Ins. Co. of Am.*, 735 F.2d 1194, 1195–96 (9th Cir. 1984).

The Revised Trust Agreement of Locals 302 & 612 includes an attorneys' fees provision:

> [The Trust Funds] may *take legal action* to collect all delinquent amounts owing to the Fund and the parties agree that if the delinquent account of any Individual Employer is referred to any attorney for collection, such Individual Employer shall immediately become liable for a reasonable sum for the attorney fees, court costs, and all reasonable expenses, including payroll auditor fees, *in connection with such suit or claim*. *In any such legal action*, venue may be laid in the Superior Court for King County, Washington, at the option of the Trustees.

Dkt. No. 14 at 239 (emphasis added).

The Trust Funds' right to recover attorney fees comes specifically when "legal action" is taken, a phrase long understood to mean the formal commencement of litigation through the filing of a lawsuit. *See* "take legal action," Merriam-Webster.com, (visited Feb. 13, 2025) ("to do start a lawsuit against someone : to sue someone"). The Trust Funds would read this phrase out of the contract by focusing exclusively on the "suit or *claim*" language, but the word "such," as used in this clause refers back to the legal action previously mentioned, and not to any collection activities that might involve lawyers.

This interpretation is confirmed when read with the last sentence of the attorney's fees provision. The final sentence states that "In any such legal action, venue may be laid in the Superior Court for King County, Washington." Since venue can only be "laid" in a court for an actual lawsuit—not for demand letters,

1      settlement negotiations, or other pre-litigation activities—the term "legal action"

2      must refer specifically to a filed litigation.

3            That said, in limited context, prelitigation attorney services may be

4      considered time spent "on the litigation." *Webb v. Bd. of Educ. of Dyer Cnty.*, 471

5      U.S. 234, 243 (1985). In fact, Fed. R. Civ. P. 11 requires attorneys to, before

6      commencing a civil action, investigate the claim "to ascertain that it has at least

7      some merit [and] that the damages sought appear to bear a reasonable relation to

8      injuries actually sustained." *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir.

9      1979). But hours spent "years before the complaint was filed" may be difficult to

10     construe as "on the litigation." *Webb*, 471 U.S. at 242.

11           The Trust Funds filed this action on May 31, 2023, but they seek attorney

12     fees dating back to April 7, 2021—some *two years* earlier. This time is not connected

13     to the litigation. Rather, the Court draws the line in March 2023, as it is evident

14     from counsel's time entries that they are preparing for litigation. Thus, the Court

15     reduces the time sought by 16.9 hours.

16           As for O'Bunco's unsupported allegation that the time spent was excessive,

17     the Court is not persuaded. "By and large, the court should defer to the winning

18     lawyer's professional judgment as to how much time he was required to spend on

19     the case; after all, he won, and might not have, had he been more of a slacker."

20     *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Trust Funds

21     won, and now O'Bunco must pay up. The Court has reviewed the rest of the detailed

22     fee report submitted by the Trust Funds' attorneys and finds that they reasonably

23     performed 198 hours of compensable time on this matter. *Cf. Hensley v. Eckerhart*,

461 U.S. 424, 434 (1983) (counsel for the prevailing party may not recover fees for time that is "excessive, redundant, or otherwise unnecessary[.]").

The Trust Funds do not seek a multiplier here and the Court is not inclined to assign one.

Finally, O'Bunco does not claim the costs requested—$656—are unreasonable. *See generally* Dkt. No. 30.

In sum, the Court finds that the Trust Funds have established the appropriateness of a fee award of $50,311.50 and a costs award of $656.

### 4. CONCLUSION

As explained above, the Court finds and ORDERS as follows:

4.1    The Court GRANTS the Trust Funds' motion for fees and costs. Dkt. No. 28.

4.2    The Court awards the Trust Funds $50,311.50 in reasonable attorneys' fees and $656 in costs.

Dated this 18th day of February, 2025.

Jamal N. Whitehead
United States District Judge